UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHEWETO AHMED BERRY,

                Plaintiff,

    v.

TIMOTHY M THRASHER, MIKE
OBENLAND, ROBERT SMITH, MARK
HUNLEY, KATRINA HENRY, JANE
DOE, and DAN MCBRIDE,

                Defendants.

CASE NO. C13-5065 RBL-KLS

REPORT AND
RECOMMENDATION
NOTED FOR:  FEBRUARY 21 , 2014

This matter has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Rules MJR 1, MJR 3, and MJR 4.  This matter comes before the Court on Defendants' motion for summary judgment.  Dkt. 26.  Having reviewed Defendants' motion, the attachments in support of the motion, along with the remaining record, the undersigned recommends that Defendants' motion be granted and submits the following Report and Recommendation for the Court's review.  The Plaintiff did not respond to defendants' motion even though he was given proper and timely warnings regarding summary judgment.  Dkt. 33.

1             **FACTUAL AND PROCEDURAL BACKGROUND**

2     **Plaintiff's allegations.**

3       Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 and he names as

4 Defendants Timothy Thrasher, Mike Obenland, Robert Smith, Mark Hunley, Katrina Henry, and

5 Dan McBride.

6       The following summary is taken from Plaintiff's verified complaint. Dkt. 5. Plaintiff

7 alleges in his verified complaint that Defendants failed to protect him from an inmate assault,

8 failed to provide adequate medical care for injuries he received during the assault, and interfered

9 with his medical treatment. Dkt. 5, pp. 5-10.

10       According to the "facts" set forth in his complaint the Plaintiff was moved in December

11 of 2011 from Clallam Bay Correction Center (CBCC) to the Monroe Correctional Complex

12 Twin Rivers Unit, (MCC/TRU). Plaintiff asserts, without providing evidence to support his

13 claim, that his transfer occurred because of Defendants Thrasher and Obenland's concerns for

14 Plaintiff's safety. Dkt. 5, p. 5.

15       After Plaintiff arrived at MCC/TRU Defendant Thrasher and another person who is not

16 a named defendant, Juan Padilla, asked Plaintiff to take charge of a security threat group at Twin

17 Rivers and Plaintiff refused. Subsequently in February of 2012, Juan Padilla fabricated

18 information that resulted in an infraction and the Plaintiff was placed in administrative

19 segregation. Mr. Berry asserts that Defendant Thrasher retaliated against him and transferred

20 him back to Clallam Bay "despite knowledge of a substantial risk of serious harm" to Plaintiff.

21 Dkt. 5, pp. 5-6. Plaintiff provides no proof for his assertions regarding Defendant Thrashers

22 state of mind or his allegation that this Defendant actually knew of a substantial risk of harm to

23 Plaintiff if he was transferred back to Clallam Bay.

24

REPORT AND RECOMMENDATION - 2

Plaintiff alleges that another non-defendant, Candice Germeau, expressed concerns for his safety when she met with him at CBCC on April 26, 2012.  Plaintiff was subsequently placed in segregation on May 1, 2012.  Dkt. 5, p. 6.  Plaintiff states that he was released into general population at the end of May.  *Id.*

In the verified complaint Plaintiff alleges that Defendant Thrasher began moving security threat group inmates to Clallam Bay in July and August of 2012 and that the transfers included inmates who he asserts were well "known to conspire" against Plaintiff including an inmate named Ramos. *Id* at pp. 6-7.  Plaintiff does not support this allegation with facts showing that any named Defendant had knowledge that any of the inmates transferred to Clallam Bay intended to harm Plaintiff.

Plaintiff alleges, again without proof, that Defendant Thrasher "ordered" Candice Germeau to release him into general population.  Plaintiff argued with Ms. Germeau that it was not safe for him to be at Clallam Bay. *Id* at p.7.  Plaintiff claims he asked Ms. Germeau to contact Defendant Thrasher and that Mr. Thrasher refused Plaintiff's request for a transfer.  Dkt. 5, p.7.  Plaintiff also alleges that he reported to "the investigator" that inmate Ramos, who was then in segregation, was conspiring to have him assaulted and that Ms. Germeau "expressed that her supervisor was unwilling to transfer" Plaintiff.  *Id.*

In September of 2012 inmate Ramos was released from segregation and on October 6, 2012 Plaintiff was assaulted.  Dkt. 5, p. 8.  Plaintiff broke his hand in the assault and alleges he had a "compound fracture."  *Id.*  However, Plaintiff admits that immediately after the assault he denied that he was injured when nurse Jane Doe asked him if he was hurt.  *Id.*

Plaintiff declared a medical emergency a short time later and claims that the same nurse only offered him ibuprofen.  Dkt. 5, p. 8.  Plaintiff filed a grievance on October 8, 2012 and it was not until October 9, 2012 that a physician's assistant ordered x-rays of his hand and medical

1   treatment with prescription pain killers began.  Dkt. 5, p. 8.  Plaintiff states he declared medical

2   emergencies repeatedly over the next several days because of pain in his hand with little or no

3   results and that it was not until October 16 or 17 that his hand was put in a cast.

4          Plaintiff was transferred to Airway Heights Corrections Center on November 29, 2012

5   and a physician or physician assistant named Hunley removed the cast which plaintiff believes

6   should have been taken off two to three weeks earlier.  Dkt. 5, p. 9.  Plaintiff does not name this

7   person as a defendant, but he does name a Corrections Officer, Mark Hunley, as a defendant and

8   states that Mark Hunley along with defendant Dan McBride took a support brace from his cell on

9   December 23, 2012.  Dkt 5, p. 9.  Plaintiff states that he has not received any follow up and that

10  his hand is disfigured with only 20 to 30 percent mobility.  Dkt. 5, p. 9.  Plaintiff seeks injunctive

11  and monetary relief.  *Id.*

12         **Defendants' contentions.**

13         1.     **Failure to protect and transfer back to Clallam Bay**.

14         Defendants dispute Plaintiff's statements of facts, contend that Plaintiff has no evidence

15  to support his claims of deliberate indifference to his safety, and that contrary to Plaintiff's

16  allegations, Defendants were not on notice that he was in danger.

17          Defendant Thrasher, Chief of Investigative Operations of the Department of Corrections,

18  notes that when Plaintiff came into the prison system he admitted to being a member of a violent

19  gang, the Surenos, and his involvement with that gang was confirmed by Plaintiff's tattoos which

20  clearly mark him as a member of the Surenos.  Dkt. 28, page 2.  The Surenos, and other gang

21  members, are located throughout the Washington prison system and Defendant Thrasher says

22  that this is true for most other states as well.  *Id.*  It is often impossible to predict when inmate to

23  inmate gang violence will occur unless investigators have "knowledge of a specific threat and

24  can take action to prevent the outbreak of violence between STG members."  *Id.*

Defendant Thrasher outlined Plaintiff's history of violence in other facilities and his housing assignments prior to Plaintiff being transferred to the Clallam Bay prison in 2011. *Id.* at p. 4. Prior to being transferred to Clallam Bay Plaintiff spent the majority of his incarceration in maximum custody and an intensive management setting because of his involvement in gang violence. *Id.*

In his affidavit Defendant Thrasher states that while Plaintiff was at Clallam Bay he completed an Intensive Transition Program, ("ITP"), designed to help him break away from gang membership and gang behavior. Dkt. 28 p. 4. Defendant Thrasher contends that it was because Plaintiff had completed this program, and not because Defendant feared for his safety, that Plaintiff was transferred to the Monroe Correctional Complex Twin Rivers Unit and given the opportunity to transition into general population and medium custody. Dkt. 28 p. 4.

Defendant Obenland, who is the superintendent of CBCC, submits an affidavit that supports Defendant Thrasher's contentions. Dkt. 29. Further, both Defendants Thrasher and Obenland outline Plaintiff being placed in segregation at the Monroe Complex when he was infracted for trying to organize the Nation of Islam inmates into a gang. Dkt. 28 and 29. Defendant Obenland states that a decision was made to return Plaintiff to Clallam Bay because it was one of only two prisons in the state that allowed Plaintiff the opportunity to be placed in close custody general population and the goal was to transition him back to medium custody. Dkt. 29 p. 4. Defendant Obenland states that he specifically remembers being consulted about the transfer and that he agreed to take Plaintiff back "primarily because he had successfully completed the ITP program when he was earlier at CBCC." *Id.* Defendant Thrasher, in his affidavit, supports Defendant Obenland's contentions. Dkt. 28, p. 5. Mr. Thrasher also says that Plaintiff was consulted about the transfer and agreed to return to CBCC. Dkt. 28, p. 5. Thus, Defendants submit admissible evidence that directly contradicts Plaintiff's conclusory assertion

1    that his transfer back to CBCC was retaliatory or that Defendant Thrasher knew of a substantial

2    risk to Plaintiff's safety.

3         Defendants also contest Plaintiff's assertion that any named Defendant had specific

4    knowledge that Plaintiff was in danger from an assault on or around October 6, 2012.  Defendant

5    Thrasher says:

6         Mike Obenland, CBCC investigators and I had several conversations with
          plaintiff after he returned to CBCC in 2012.  Plaintiff continually assured
7         everyone during these conversations that he wished to leave close custody and be
          placed in medium security at CBCC.  He never expressed any concern for his
8         safety from other offenders, including concerns from any offenders at CBCC who
          were affiliated with the Surenos.  Shortly after his placement in medium security,
9         plaintiff was infracted for tattooing and placed in administrative segregation for
          10 days.  He returned to medium security when he completed this sanction period.
10        Again, he expressed no fear leaving segregation and returning to the general
          population at CBCC.

11

12   Dkt. 28, pp. 5-6.  Defendant Obenland states that offenders can only be kept in administrative

13   segregation on a temporary basis unless specific evidence is found to keep them in segregation or

14   the offender asks to remain in segregation.  Dkt. 29, p. 4.  Obenland states:

15        … I had a conversation with plaintiff shortly before his release from segregation
          on May 20, 2012 and asked him whether he wished to remain in segregation for
16        his own protection, given his known association with the Surenos.  He stated that
          he felt no threat from other inmates and asked to be returned to medium security.
17        Shortly after his return to medium security, plaintiff was infracted for tattooing
          and placed in administrative segregation for 10 days.  He returned to medium
18        security when he completed this sanction period on June 29, 2012.  Again, he
          expressed no fear of leaving segregation and returning to the general population at
          CBCC.
19

20   Dkt. 29, p. 5.  Defendant Obenland goes on to state that he had several conversation with

21   Plaintiff between April 2012 and November 2012 concerning whether he felt secure in medium

22   custody as opposed to segregation.  Defendant Obenland states that at no time did Plaintiff ever

23   inform him or any other staff member that he was in danger either from the inmate who assaulted

24   him, inmate Ramos, or any other person associated with the Surenos.  Dkt. 29 p. 6.  This

1    evidence directly contradicts Plaintiff's conclusory assertions that Defendants were aware he was

2    in danger.

3       Defendants have also submitted an affidavit from the CBCC investigator, Candice

4    Germeau.  She contradicts Plaintiff's assertions that she told Defendant Thrasher that Plaintiff

5    was in danger prior to his being assaulted on October of 2012.  Dkt. 27.  In the closing paragraph

6    of her affidavit she states:

7       Prior to plaintiff's assault by Offender Toubes-Diaz on October 6, 2012,
     no information was received that plaintiff was in danger from this offender or any

8    other offender.  At no time did plaintiff ask to be placed in segregation for his
     own protection.  To the contrary, he stated many times that he wished to remain in

9    the medium custody unit.  No evidence was ever received that Offender Ramos
     ordered the assault of plaintiff by Offender Poubes-Diaz [sic] or was otherwise

10   involved in this assault.

11   Dkt. 27, p. 5.  Thus, Defendants have come forward with admissible evidence

12   contradicting the conclusory assertions contained in Plaintiff's verified complaint and

13   Plaintiff failed to respond or come forward with admissible evidence based on firsthand

14   knowledge that creates a triable issue of fact regarding either his transfer back to CBCC

15   or the October 6, 2012 assault.

16      2.  **Medical treatment and the allegation that defendants interfered with**

17   **treatment**.

18      Defendants contend that Plaintiff received adequate medical care and that correctional

19   officers removed Plaintiff's hand brace only after medical personnel and correctional staff

20   observed that Plaintiff was not wearing the brace and medical staff stated that Plaintiff no longer

21   needed his brace.

22      Defendants submitted the affidavit of Dr. Kenney, the medical director at large for DOC,

23   who outlined his medical education in his affidavit and stated that after review of the medical

24   record it is his professional medical opinion that the treatment provided to the plaintiff met the

1   standard of care.  Dkt. 32, p. 5.  Dr. Kenny is the duly appointed records custodian and is

2   qualified to give a medical opinion based on his education and position.

3          Dr. Kenny's review of Plaintiff's medical records show Plaintiff was seen at 9:15 a.m.

4   the day of the assault by a nurse, Rose Preston, and Plaintiff denied any injury but the nurse

5   noted a scratch and slight swelling on Plaintiff's right hand.  Dkt. 32, p. 3.  A different nurse,

6   Cheryl Lancaster, saw Plaintiff later that same day at around 2:30 p.m. for pain on top of

7   Plaintiff's right hand.  *Id*.  Plaintiff was offered medication for swelling and pain as well as ice

8   and an ace wrap, but Plaintiff refused the ice and bandage.  Dr. Kenney also notes that Ms.

9   Lancaster contacted the Medical Director, Dr. Clifford, and obtained a "plan of care over the

10  weekend as October 6 was a Saturday."  Dkt. 32, p.3.  Plaintiff was seen by a nurse practitioner

11  on Monday October 8, 2012 and x-rays were ordered.  The x-rays were reviewed by Dr. Johnson

12  on Tuesday, October 9, 2012 and he diagnosed a fracture of a metacarpal in Plaintiff's right

13  hand.  Medical staff gave plaintiff a multi day prescription for narcotic pain killers, oxycodone.

14  Dkt. 32. p. 3.  Medical staff, made an appointment for the Plaintiff to see an orthopedic specialist

15  because they believed surgery might be needed.  Dkt. 32, Exhibit B, transcribed note dated

16  October 9, 2012 from ARNP Edith Kroha.  Plaintiff's right hand was also placed in a fiberglass

17  splint and he was told it was important to wear the splint.  Dkt. 32, p. 3.  Dr. Kenny's affidavit

18  reflects Plaintiff being told by medical staff repeatedly to wear the splint and his response was

19  that he did not want the splint.  *Id*.  A doctor placed Plaintiff's hand in a cast on October 17,

20  2012.  At this time Plaintiff was able to make a complete fist, had full wrist motion and full

21  finger function.  Dkt. 32, pp. 3-4.  Medical staff gave Plaintiff ibuprofen for pain two days later

22  when he complained of hand pain.  *Id*.

23         Plaintiff was transferred to the Airway Heights Corrections Center and Physicians

24  Assistant Hurley removed the cast on November 29, 2012.  The examination revealed "no

1   abnormalities of healing."  Dkt. 32 p. 5 ¶ 6.  New x-rays were ordered and Plaintiff was issued a

2   rigid brace.  *Id.*  Department of Corrections medical staff conferred with Dr. Eric J. Bowton, an

3   Orthopedic Surgeon in Spokane, concerning the updated x-rays and on December 14, 2012.

4   Doctor Bowton stated the hand was healed "sufficiently to discontinue immobilization" and no

5   further medical treatment except for range of motion exercises was recommended.  *Id.*

6          Four days after Doctor Bowton had stated that immobilization was no longer needed

7   nursing staff observed Plaintiff was not wearing his brace.  Dkt. 32 , p. 4.  Plaintiff alleges that

8   the brace was taken by Officers Hunley and McBride during a December 23, 2012 cell search.

9   Dkt. 5. p. 9.  This search would have occurred nine days after Doctor Bowton stated that

10  immobilization was no longer needed.  Dkt. 32 p. 5 ¶ 6.  Both Defendants Hunley and McBride

11  submit affidavits saying that Hunley checked with medical staff before confiscating the brace.

12  Dkt. 30, and 31.

13                            **STANDARD OF REVIEW**

14         The Court shall grant summary judgment if the movant shows that there is no genuine

15  dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R.

16  Civ. P. 56(a).  The moving party has the initial burden of production to demonstrate the absence

17  of any genuine issue of material fact.  Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,* 263 F.3d

18  1070, 1076 (9th Cir. 2001) (en banc).  To carry this burden, the moving party need not introduce

19  any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the

20  absence of evidence to support the nonmoving party's case.  *Fairbank v. Wunderman Cato*

21  *Johnson*, 212 F.3d 528, 532 (9th Cir.2000).  A nonmoving party's failure to comply with local

22  rules in opposing a motion for summary judgment does not relieve the moving party of its

23  affirmative duty to demonstrate entitlement to judgment as a matter of law.  *Martinez v.*

24  *Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

1    However, "if the moving party shows the absence of a genuine issue of material fact, the

2    non-moving party must go beyond the pleadings and 'set forth specific facts' that show a

3    genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing*

4    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)).  The

5    non-moving party may not rely upon mere allegations or denials in the pleadings but must set

6    forth specific facts showing that there exists a genuine issue for trial.  *Anderson v. Liberty Lobby,*

7    *Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  A plaintiff must "produce at

8    least some significant probative evidence tending to support" the allegations in the complaint.

9    *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).  A court "need not

10   examine the entire file for evidence establishing a genuine issue of fact, where the evidence is

11   not set forth in the opposing papers with adequate references so that it could conveniently be

12   found." *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001).

13   This is true even when a party appears *pro se*.  *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir.

14   2007).

15   However, where the nonmoving party is *pro se*, a court must consider as evidence in

16   opposition to summary judgment all contentions "offered in motions and pleadings, where such

17   contentions are based on personal knowledge and set forth facts that would be admissible in

18   evidence, and where [the party appearing pro se] attested under penalty of perjury that the

19   contents of the motions or pleadings are true and correct."  *Jones v. Blanas*, 393 F.3d 918, 923

20   (9th Cir. 2004) (citation omitted), *cert. denied*, 546 U.S. 820, 126 S. Ct. 351, 163 L.Ed.2d 61

21   (2005).

22                                   **DISCUSSION**

23   **I.      Failure to protect claim.**

24

1    To state a claim based on failure to protect an inmate must show incarceration under

2    conditions posing a substantial risk of serious harm.  *Farmer v. Brennan*, 511 U.S. 825, 834

3    (1994).  In order, "[t]o violate the Cruel and Unusual Punishment Clause, a prison official must

4    have a 'sufficiently culpable state of mind' … [T]hat state of mind is one of 'deliberate

5    indifference' to inmate health or safety."  *Id*.  (citations omitted).  The prison official will be

6    liable only if "the official knows of and disregards an excessive risk to inmate health and safety;

7    the official must both be aware of facts from which the inference could be drawn that a

8    substantial risk of serious harm exists, and he must also draw the inference."  *Id*. at 837.

9    Defendants have met their burden of showing the absence of a genuine issue of material

10   fact.  Defendant Thrasher directly and factually  contradicts plaintiff's conclusory assertions in

11   the complaint that Defendant Thrasher transferred Plaintiff from Twin Rivers to Clallam Bay

12   knowing that Plaintiff would be in danger.  Dkt. 28.  Mr. Thrasher outlines plaintiff's

13   involvement with a gang, the Surenos.  Plaintiff is depicted as having assaulted people on behalf

14   of the gang and having been assaulted by members of the gang.  *Id*.  Defendant Thrasher states

15   that prison officials transferred plaintiff from Twin Rivers back to Clallam Bay because of

16   plaintiff's continued association with the Surenos and other gang activity at Twin Rivers.  Dkt. #

17   28.  Defendants also submitted the affidavit of a non defendant, Investigations and Intelligence

18   Officer Germeau, who contradicts plaintiff's assertions that she had specific knowledge that

19   plaintiff was in danger and that she conveyed this information to Defendant Thrasher.  Dkt. 27.

20   Officer Germeau says she was not aware of a specific threat to plaintiff and she says plaintiff did

21   not ask to be moved into segregation.  Dkt. 27, p. 5.

22   Plaintiff does not need to prove that prison officials were specifically aware that inmate

23   Toubes-Diaz was going to assault him, however, he does need to show that the prison officials

24   were aware of an excessive risk to Plaintiff's safety and they harbored a culpable state of mind

1   amounting to deliberate indifference in order to impose liability under the Eighth Amendment.

2   *Farmer v. Brennan*, 511 U.S. 825, 842- 845.

3          The record before the Court shows that Defendants Thrasher and Obenland had general

4   concerns about Plaintiff's safety, but both Defendants submitted affidavits alleging that Plaintiff

5   told them he felt he was safe in general population in the medium custody area of Clallam Bay.

6   Dkt. 28, and 29.  Liability is not imposed unless "the official knows of and disregards an

7   excessive risk to inmate health and safety; the official must both be aware of facts from which

8   the inference could be drawn that a substantial risk of serious harm exists, **and he must also**

9   **draw the inference.**" *Id*. at 837 (emphasis added).

10         Plaintiff has failed to come forward with admissible evidence to show that either

11  Defendant actually drew the inference or should have drawn the inference that Plaintiff was

12  facing an excessive risk to his safety or that he was in danger of being assaulted on October 6,

13  2012.  Plaintiff's assertions against Defendants Thrasher and Obenland are conclusory and based

14  on speculation as to what these two Defendants knew or thought.  Dkt. 5.  At summary judgment

15  Plaintiff needs to refute Defendants' contentions with admissible evidence to contradict

16  Defendants or raise a triable issue of fact.  Plaintiff did not respond to the motion for summary

17  judgment.  The Court recommends granting Defendants' motion for summary judgment on

18  Plaintiff's failure to protect claim.  The Court recommends dismissing Defendants Thrasher and

19  Obenland from this action with prejudice.

20         **II.      Medical claims.**

21          Plaintiff alleges that defendants Robert Smith, Katrina Henry, Mark Hunley, Dan

22  McBride and a Jane Doe nurse provided constitutionally inadequate medical care for his hand

23  injury or interfered with his treatment by removing a support brace.  Dkt. 5. pp. 8-10.  Smith and

24  Henry are supervisory health care staff, (Dkt. 5, p. 3), and as such they are not involved in the

1   care or medical treatment of offenders.  Dkt. 32, pp. 5-6.  Plaintiff has failed to plead any facts

2   showing how these two individuals acted to deny him any constitutional right.  However,

3   Defendants do not raise that issue and instead argue that the treatment Plaintiff received was

4   constitutional.  Mark Hunley and Dan McBride are Correctional Officers who removed the hand

5   brace from Plaintiff's cell on December 23, 2012.  Defendant Jane Doe was not identified by

6   Plaintiff and has not been served.

7          To establish deliberate indifference, a prisoner must show that a defendant purposefully

8   ignored or failed to respond to the prisoner's pain or possible medical need.  *McGuckin*, 974 F.2d

9   at 1060; *Estelle*, 429 U.S. at 104.  A determination of deliberate indifference involves an

10  examination of two elements: (1) the seriousness of the prisoner's medical need; and (2) the

11  nature of defendant's response to that need.  *McGuckin*, 974 F.2d at 1059.  A serious medical

12  need exists if the failure to treat a prisoner's condition could result in further significant injury or

13  the unnecessary and wanton infliction of pain.  *Id.*

14         In order to establish deliberate indifference there must first be a purposeful act or failure

15  to act on the part of the defendant.  *Id.* at 1060.  A difference of opinion between a prisoner and

16  medical authorities regarding proper medical treatment does not give rise to a §1983 claim.

17  *Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981).  Mere negligence

18  in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth

19  Amendment rights.  *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).  Further, a

20  prisoner can make no claim for deliberate medical indifference unless the denial was harmful.

21  *McGuckin*, 974 F.2d at 1060; *Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407

22  (9th Cir. 1985).

23         The parties agree that immediately after the assault, when Plaintiff was seen by

24  Defendant Jane Doe, he denied that he was injured.  Dkt. 5 p. 8, ¶ 29 and Dkt. 26. p. 10.  Doctor

REPORT AND RECOMMENDATION - 13

1    Kenny states that during this initial contact the nurse, Rose Preston, noted that Plaintiff's hand

2    had a scratch and was slightly swollen.  Dkt. 32. ¶ 4.  The medical record attached to Dr.

3    Kenney's affidavit discloses that Plaintiff was told to apply a cool cloth to the area, Dkt, 32, ¶ 4

4    and attached medical entry dated October 6, 2012.  Doctor Kenny also notes that within a few

5    hours Plaintiff complained of hand pain and that he was treated, given medication to control the

6    swelling and pain by a different nurse, Cheryl Lancaster.  Dkt, 32, ¶ 4 and attached medical

7    entry, second entry dated October 6, 2012.  Plaintiff refused the ice and an ace wrap.  Dkt. 32, ¶

8    4 and second medical entry dated October 6, 2012.  Dr. Kenny states that Nurse Lancaster

9    consulted with the Medical Director, Clifford Johnson, as to a plan of care for the next two days

10   because it was a Saturday.  Dkt, 32, ¶ 4.

11           Medical staff saw Plaintiff on Monday and x-rays were ordered.  *Id*.  Doctor Johnson

12   reviewed the x-ray on Tuesday, October 9, 2012 and diagnosed Plaintiff as having a broken

13   finger.  Medical staff gave Plaintiff a fiberglass splint and narcotic pain medication and made an

14   appointment for him to see an orthopedic specialist because they believed surgery might be

15   needed.  Dkt. 32, Exhibit B, transcribed note dated October 9, 2012 from ARNP Edith Kroha.

16           The orthopedic specialist saw Plaintiff on October 17, 2012 and placed his hand in a short

17   arm cast.  Plaintiff fails to show that a delay in treatment caused any injury and the record

18   reflects Plaintiff being treated by medical staff to manage his pain.  Further, the medical record

19   shows that Plaintiff did not consistently to use the splint prior to his hand being placed in a cast.

20   Dkt. 32, ¶ 4.

21           The Court notes that the orthopedic clinic record where Plaintiff's cast was applied

22   indicates in the "plan" section of the report that Plaintiff would have the cast for approximately

23   four weeks.  Dkt. 32, p. 13.  Medical Staff at Airway Heights Correction Center, P.A. Hurley,

24   who is not a named defendant, removed Plaintiff's cast on November 29, 2012, approximately

1   one week late, and issued him a rigid splint.  Dkt. 32, ¶ 6.  On December 14, 2012, medical staff

2   consulted with an orthopedic specialist in Spokane, Dr. Bowton, who opined that the hand had

3   healed enough that immobilization was no longer needed.  *Id*.  Dr. Kenney states that in his

4   opinion "treatment for the right hand injury that plaintiff sustained as a result of the October 6,

5   2012 altercation at CBCC met the standard of care for treatment of this condition." Dkt. 32, p. 5

6   ¶ 9.

7           On December 18, 2012, a nurse at pill line observed Plaintiff not wearing the rigid splint.

8   Dkt. 32, ¶ 7.  Correctional staff had also observed Plaintiff not wearing the splint.  *Id*.  Defendant

9   Mark Hunley removed the splint from Plaintiff's cell after consulting with medical staff.  Dkt.

10  30.  Plaintiff states the brace was taken from him on December 23, 2012.  Dkt. 5. pp. 9-10.

11  Thus, the brace was not taken from Plaintiff until nine days after Dr. Bowton stated that

12  immobilization was no longer needed.

13          Plaintiff fails to show that any named defendant was deliberately indifferent to his

14  medical needs.  At most he shows a disagreement regarding the treatment he received.  A

15  difference of opinion between a prisoner and medical authorities regarding proper medical

16  treatment does not give rise to a §1983 claim.  *Franklin v. Oregon, State Welfare Div.*, 662 F.2d

17  1337, 1344 (9th Cir. 1981).  While there may have been a delay in getting Plaintiff's hand in a

18  cast, Plaintiff received a splint and treatment for pain during this time and he fails to show that

19  any delay caused him harm.  While the cast was left on one week longer than originally planned

20  Plaintiff fails to show the delay in removing the cast cause him any injury.

21          When Correctional Officer Hunley removed the splint from Plaintiff's cell he checked

22  with medical personnel prior to its removal.  Dkt. 30.  Plaintiff has failed to support his

23  allegations with any admissible evidence and the Court recommends granting Defendants'

24  motion for summary judgment.

1    III.    Qualified immunity.

2        Defendants have raised the affirmative defense of qualified immunity.  Because the Court

3   concludes that Defendants did not violate a constitutional right or duty owed Plaintiff the Court

4   will not address this affirmative defense.

5                                    **CONCLUSION**

6        Defendants have met their burden of demonstrating that there are no genuine issues of

7   material fact and that they are entitled to judgment as a matter of law.  Plaintiff has failed to

8   support his claims with admissible evidence.  Accordingly, the undersigned recommends that the

9   Court **GRANT** Defendants' motion for summary judgment.  Dkt. 26.

10       Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

11  **fourteen (14)** days from service of this Report and Recommendation to file written objections

12  thereto. *See also* Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those

13  objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the

14  time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed set this matter for consideration

15  on February 21 , 2014, as noted in the caption.

16       **Dated** this 4 day of February, 2014.

17

18

                                                    Karen L. Strombom
19                                                  United States Magistrate Judge

20

21

22

23

24

REPORT AND RECOMMENDATION - 16